UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RICHARD ROLAND,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:21-cv-01249-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19) |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits.[1] The parties have consented to entry of final judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 8).

　　　　Plaintiff presents the following three issues:

1. The ALJ erred as a matter of law in rejecting the opinion of Plaintiff's treating physician, Dr. Juan Lopez Solorza.
2. The ALJ failed to offer clear and convincing reasons for rejecting the Plaintiff's subjective

---

[1] The 2020 opinion at issue follows the Appeals Council's remand of the ALJ's 2018 opinion because "[t]he jobs identified at Step 5 of the sequential evaluation process are inconsistent with the residual functional capacity findings in the hearing decision." (A.R. 212).

1

complaints.

3. The ALJ improperly rejected the third-party seizure questionnaire of Patricia Roland. (ECF No. 19, pp. 1-2).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

**I.   ANALYSIS**

**A.   Subjective Complaints**

Because resolution of this issue informs the discussion of Plaintiff's medical-opinion issue, the Court first considers Plaintiff's argument that the ALJ failed to offer clear and convincing reasons to reject his subjective complaints regarding his seizures. (ECF No. 10, p. 15).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 27). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's subjective complaints. "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947,

954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

The ALJ summarized Plaintiff's subjective complaints and the reasons for discounting them as follows:

> The claimant is now a 44-year old man who alleges disability based on a seizure disorder, glaucoma in both eyes (early stages), and deafness in his right ear. The claimant has alleged that he experiences seizures four to five times per week, including while asleep and that he has possibly experienced a stroke. He also alleges asthma, allergies, high blood pressure, weakness, and inability to lift over 10 pounds. The claimant has a VNS unit that was placed in his chest to help control his seizures. At the hearing in June 2018, and in a brief dated June 29, 2020, the claimant's representative further alleges sleep apnea, PTSD, depressive disorder, anxiety disorder, dysthymia, and borderline intellectual functioning [Exhibit D3E; Exhibit D5E; Exhibit D10E; Exhibit D14E; Exhibit D30E].
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The claimant's statements about the intensity, persistence, and limiting effects of his symptoms are also inconsistent. The claimant has alleged seizures of unknown etiology occurring at a rate of only three to four times per month, but which require three to four days for recovery. However, this statement is inconsistent with a treatment note dated May 25, 2018, documenting a seizure in December 2016. The medical evidence shows that the frequency of the claimant's seizures decreased following placement of a vagal nerve stimulator (VNS) in December 2016. In addition, neurological testing has been unremarkable as CT scans of his brain were normal. The claimant also testified that he has had at least ten emergency room (ER) visits due to seizures; however, this statement is inconsistent with the medical evidence of record, which does not show that the claimant has had ten ER visits due to seizures since his amended alleged onset date.
>
> Further, other than the placement of the VNS unit, the claimant has received mostly routine and conservative treatment, and has generally had normal physical examinations, as discussed further below.
>
> The claimant has also made inconsistent statements about the frequency of his seizures. In June 2017, the claimant told his primary care physician that he has up to "20 seizures per month" and that another treating physician, Dr. Aguilar, determined that the claimant is disabled. However, these statements are inconsistent with the claimant's previous statements that, following placement of

> the VNS unit in December 2016, his seizures have lessened in frequency and intensity [Exhibit D16F/23]. Further, these statements are also inconsistent with the medical evidence of record, as there is no medical evidence of record that Dr. Aguilar opined that the claimant is disabled nor is there any indication that the claimant has previously complained of having 20 seizures per month. In contrast, as discussed further below, the medical evidence of record indicates that the claimant's seizures have reduced in frequency and intensity since placement of the VNS unit.
>
> The claimant also testified that his treating providers opined he might have cancer in his brain that is causing his seizures; however, there is no mention in the medical evidence of record of a possible diagnosis of cancer.
>
> The claimant has made inconsistent statements with regard to his work history. Although the claimant's earnings record indicates that the claimant has no past relevant work, with no significant earnings since 2000, and no indication that he worked at Pizza Hut in the last 15 years [Exhibit D3D], he told his treating physician during an office visit on June 29, 2017, that he worked for 22 years at Pizza Hut, eventually becom[]ing general manager [Exhibit D16F/23]. The claimant also reported in a Disability Report, dated February 2, 2017, that he worked as a general manager at Pizza Hut from January 1995 to October 2001, working 40 hours per week [D3E/3]. However, this allegation is inconsistent with the claimant's earnings record [D7D; D10D].

(A.R. 27-28).

The Court first looks to the inconsistencies that the ALJ cited to discount Plaintiff's subjective complaints, beginning with medical records purportedly showing that Plaintiff had no seizures after December 2016, or at least that the seizures after this date were not disabling. Again on this critical point, the ALJ stated "The claimant has alleged seizures of unknown etiology occurring at a rate of only three to four times per month, but which require three to four days for recovery. However, this statement is inconsistent with a treatment note dated May 25, 2018, documenting a seizure in December 2016." (A.R. 27).

The ALJ provides no citation to the record for the treatment note referenced. However, the Court has located a June 5, 2017 office visit at the McHenry Medical Office, which appears to have been *printed* on May 25, 2018. (A.R. 768). In its submissions to this Court, the Defendant also cites to this record, asserting that it shows that "Plaintiff reported that his last seizure was in December 2016." (ECF No. 20, p. 4 (citing A.R. 768)). However, the record states: "Hx of seizure. seeing specialist, on Depakote. *still has seizure*. wants to recheck blood level. last one

was 12/2016, 109, mildly elevated." (A.R. 768) (emphasis added). Upon review, the Court concludes that the notation, "last one was 12/2016," refers to Plaintiff's last blood-level check for Depakote, not his last seizure date. After all, the notation to the "last one" being in December 2016 follows the statement about Plaintiff's blood level; it does not follow the notation to Plaintiff having seizures. Likewise, the medical record elsewhere contains a basic metabolic panel report from December 2016, for valproic acid, with a blood level of 109.0 mg/L, which suggests that the phrase—"last one was 12/2016, 109, mildly elevated"—was referring to this blood report. (A.R. 779). Such a conclusion is further supported by a medical record indicating that valproic acid is the same medication as Depakote. (A.R. 944). Lastly, the record contains a June 5, 2017 blood report identifying Plaintiff's valproic acid level as 80.5 mg/L. (A.R. 773). Since this was the same day as the June 5, 2017 office visit, the notation logically refers to Plaintiff having another blood test to recheck his Depakote level (or valproic acid level) since the last blood test was in December 2016.

Elsewhere, the ALJ cited another medical record in support of the ALJ's conclusion that Plaintiff had not had a seizure since December 2016: "It was also noted in August 2017 that the claimant has not had a seizure since December 2016 [Exhibit D13F/2-3, 7-8, 14-15; Exhibit D16F/30, 35; Exhibit D17F/132, 147]." (A.R. 28). However, as Plaintiff points out, none of the cited records support this conclusion. (ECF No. 19, p. 9). The cited pages from Exhibit D13F concern Plaintiff's chest pain (A.R. 671-72), potential stroke (A.R. 676-77), and CT scan (A.R. 683-84). The cited pages from Exhibit D16F reflect information about a physical exam, Plaintiff's current medical problems (seizure disorder listed among them) and his current medications. (A.R. 770, 775).

That said, one of the cited pages from Exhibit D17F, an August 2017 record from the Doctors Medical Center of Modesto, states: "Grand Mal epileptic seizures. Last on 12/8/16, usually while sleeping." (A.R. 944). But this notation refers to Plaintiff's last "grand mal" seizure as of this date. The record as a whole indicates that Plaintiff's seizures are not limited to "grand mal" seizures. Indeed, and as described more below, Plaintiff's treating physician, Juan Solorza,

stated in June 2017 that Plaintiff "has 3 tonic clonic" seizures per month. (A.R. 652).[2]

Moreover, elsewhere ALJ acknowledged that Plaintiff claimed to have continuing "small seizures" rather than "big" seizures:

> The claimant subsequently underwent implantation of a VNS unit on December 20, 2016. The procedure went well and the claimant was discharged later that day. In follow up visits in January, February, March, April, and May 2017, the claimant was noted to be healing well, and in March 2017, he was described as doing much better in several respects, with his neck wound almost completely healed and with noticeably less hoarseness in his voice. The claimant also denied having any seizure breakthroughs since placement of the VNS, other than possibly some small seizures while he was asleep and after not having taken his medications. Further, although the claimant reported having five seizures in February, and two seizures in one week in March, he also reported that the seizures are now less frequent and of only mild intensity. In addition, in May 2017, the claimant reported having no recent "big" seizures [Exhibit D2F/1, 5-6, 9; Exhibit D4F/2; Exhibit D7F/1-21].

(A.R. 28).

With this in mind, the medical record does not provide clear and convincing evidence to discount Plaintiff's testimony that he continued to have seizures after December 2016, although, as he admitted, with less force and frequency. Notably, Plaintiff's testimony acknowledged that the VNS implant reduced the frequency of his seizures, at least "on and off" and that they are "a little bit mellow" and he is "not going into full-blown seizures." (A.R. 105). Importantly, Plaintiff's most recent testimony is that he continues to have "one or two seizures per week" and is "weak for like . . . three or four days at a time after [his] seizures" and can do "[n]othing except lay down on [his] bed." (A.R. 103). Such testimony is not clearly inconsistent with he records cited by the ALJ.

The Court next looks to the other statements that the ALJ found to be inconsistent or unsupported by the record. The court appreciates that Plaintiff's claims regarding his time spent at Pizza Hut do not appear fully consistent or supported by his earnings record. (A.R. 389, 408, 415,

---

[2] Elsewhere, the ALJ made yet another reference to Plaintiff not having a seizure since December 2016: "It was noted in August 2018 that the claimant has not had a seizure since December 2016." (A.R. 29). This appears to be a reference to an August 2018 record from the Doctors Medical Center of Modesto, which repeated the entry from the August 2017 record: "Grand Mal epileptic seizures. Last on 12/8/16, usually while sleeping." (A.R. 901). For the reasons discussed in connection with the identical record entry from August 2017 (A.R. 944), the Court determines that there is not substantial evidence to conclude that Plaintiff had not had a seizure (or disabling seizures) since December 2016.

763). Additionally, the Court has not located medical records supporting Plaintiff's claim that he had ten ER visits due to seizures; that another doctor had opined that he was disabled; and that treatment providers had previously opined that he may have brain cancer. (AR 27-28).

However, these inconsistencies and the lack of supporting evidence do not rise to the level of clear and convincing reasons to discount the key complaint at issue here—that Plaintiff continued to suffer at least one to two seizures per week that caused him to be unable to perform any work for three to four days thereafter— which is supported by the medical records, Dr. Solorza's opinion, and Plaintiff's testimony. (A.R. 103).

Therefore, the Court finds that the ALJ erred in the weight given to Plaintiff's symptom testimony.

## B. Dr. Solorza's Opinion

### 1. Standards of Review

Plaintiff also argues that the ALJ erred by failing to give specific and legitimate reasons, supported by substantial evidence, for discounting the opinion of Dr. Solorza, who offered an opinion regarding Plaintiff's abilities in connection with an eight-hour workday.[3] (ECF No. 19, p. 7); (*see* A.R. 649).

The Ninth Circuit has held the following regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6).
>
> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate

---

[3] As Plaintiff's correctly notes, because Plaintiff filed his application in January 2017 (*i.e.*, before March 27, 2017), 20 C.F.R. § 416.927 applies in considering the weight given to Dr. Solorza's opinion. (ECF No. 19, p. 7); (*see* A.R. 20). The new regulations for applications filed on or after March 27, 2017, 20 C.F.R. § 416.920c, do not apply in this case.

reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *see* 20 C.F.R. § 416.927(c) (mirroring language used in 20 C.F.R. 404.1527(c)).

The ALJ assigned partial weight to Dr. Solorza's opinion, stating as follows:

As for the opinion evidence, the claimant's treating physician, Juan Solorza, M.D., completed a Physical Medical Source Statement on June 14, 2017. Dr. Solorza wrote that he treated the claimant every three months for the last five or more years, for epilepsy. Dr. Solorza opined that the claimant can sit for at least six hours in an eight hour day; he can stand and or walk for at least six hours in an eight hour day, he would need a job that permits shifting position at will; he would need periods of walking around every 90 minutes for 15 minutes each time; he does not need an assistive device for occasional standing and or walking; he can lift and or carry up to 20 pounds frequently and 50 pounds occasionally; he can frequently twist; he can occasionally stoop, bend, crouch, squat, and climb stairs and ladders; he has no manipulative limitations; his symptoms would likely cause the claimant to be off task 10% of the day but he would not require unscheduled breaks during the workday; he is capable of low stress work; and he would be absent from work about three days per month. Dr. Solorza further opined that the claimant can do entry level menial tasks and that these limitations are intermittent and not permanent [Exhibit D8F].

Dr. Solorza was a treating physician; however, some of his opinion is inconsistent with the record as a whole, as discussed above, as well as internally inconsistent. Dr. Solorza opined that the claimant can sit for six hours, and can stand and or walk for six hours, in an eight hour day, which is consistent with a full workday of eight hours. The doctor opined that the claimant can lift and or carry up to 20 pounds frequently and 50 pounds occasionally, which is consistent with medium exertional work. However, Dr. Solorza's opinion that the claimant would be off task for 10% of the day is inconsistent with his opinion that the claimant would not require unscheduled breaks. In addition, Dr. Solorza's opinion that the claimant would not require unscheduled breaks during the workday is inconsistent with his opinion that the claimant would need periods of walking around every 90 minutes for 15 minutes each time. Further, there is little support in the medical evidence for Dr. Solorza's opinion that the claimant would need a job that permits shifting position at will, would need to walk around every 90 minutes for 15 minutes each time, would be off task 10% of the day, and would be absent from work about three days per month. As noted above, the claimant was "otherwise healthy" other than for his seizure disorder. In addition, the medical evidence of record indicates

> that the claimant received minimal medical treatment for other conditions. Additionally, Dr. Solorza's opinion that the claimant would be off task for 10% of the day, and be absent from work three days per month, is inconsistent with Dr. Solorza's opinion that the claimant would be able to perform entry level menial tasks and that these limitations are intermittent and not permanent. For these reasons, Dr. Solorza's opinion is given only partial weight.

(A.R. 29-30).

The first reason identified to support the ALJ's assignment of partial weight to Dr. Solorza's opinion is that some of his conclusions were "inconsistent with the record as a whole." (A.R. 29). To the extent that the ALJ relied on the medical record purportedly reflecting that Plaintiff had not had a seizure since December 2016 (or that his seizures were not disabling after this date) to discount the opinion, the ALJ's conclusion is not supported by substantial evidence.

The next reason given to discount Dr. Solorza's opinion is that it was internally inconsistent; for example, Dr. Solorza's opinion that Plaintiff would be off task for 10% of the workday contradicted the opinion that Plaintiff would not need unscheduled breaks. However, the question on the form that Dr. Solorza responded to asks about interference with tasks, not whether limitations would require an unscheduled break: "How much is your patient likely to be "*off task*"? That is, what percentage of a typical workday would your patient's symptoms likely be severe enough to interfere with *attention and concentration* needed to perform even simple work tasks?" (A.R. 651). Given the narrow focus of the question, the Court does not find any inconsistency between his answer and his medical opinion.

Similarly, the ALJ found Dr. Solorza's opinion—that Plaintiff would be off task for 10% of the day and absent from work three days per month—inconsistent with his opinion that Plaintiff could perform entry level menial tasks and that his limitations were intermittent and not permanent. However, Dr. Solorza's notation that Plaintiff "can do entry level menial *task[s]*" is not inconsistent with also saying that Plaintiff's symptoms will interfere with such tasks 10% of the time. (A.R. 651) (emphasis added). Nor does the fact that Plaintiff's limitations are "intermittent," rather than permanent, suggest that his symptoms will not interfere with work tasks 10% of the time. (A.R. 652). Rather, such is consistent, as Dr. Solorza noted elsewhere, with Plaintiff having good days and bad days. (A.R. 651). Most important for this case is Dr.

Solorza's notation at the end of his opinion that Plaintiff "[h]as 3 tonic clonic" seizures a month, which was "probably the most disabling" of Plaintiff's complaints. (A.R. 652). This supports Dr. Solorza's opinion that Plaintiff would be out three days per month, which would render all work unavailable according to the vocational expert. (A.R. 120-21).

Lastly, the ALJ generally rejected Dr. Solorza's opinion as unsupported, noting that a record documented him as "'otherwise healthy' other than for his seizure disorder." (A.R. 30). However, the fact that Plaintiff was "'otherwise healthy' other than for his seizure disorder" ignores that Plaintiff's key complaints of disabling symptoms stemmed from his seizure disorder.

Accordingly, the Court concludes that the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, to assign Dr. Solorza's opinion partial weight.[4]

### C. REMEDY

Plaintiff concludes by stating that this case should remanded for an award of benefits, or, alternatively for further proceedings. (ECF No. 19, p. 14). Defendant argues that this Court should affirm, but if it does not, it should remand for further proceedings. (ECF No. 20, p. 16).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the fact that Plaintiff has continuing disabling seizures is reflected in the medical record, Dr. Solorza's opinion, and Plaintiff's testimony; thus, further administrative proceedings would not be useful. Next, the ALJ failed to provide legally sufficient reasons for rejecting

---

[4] Given the Court's decision on Plaintiff's first two issues, it concludes that it is unnecessary to address Plaintiff's remaining issue—that the ALJ improperly rejected the third-party seizure questionnaire from Plaintiff's mother.

Plaintiff's subjective complaints and Dr. Solorza's testimony. And, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Notably, the vocational expert testified that there would be no jobs for a person who had three to four seizures per month causing a person to be absent from work. (A.R. 120-21). Finally, the Court does not have any serious doubt about Plaintiff's disability.

For these reasons, the Court declines to remand this case for further proceedings and will reverse the Commissioner's decision and award benefits.

**II.    CONCLUSION AND ORDER**

Accordingly, IT IS ORDERED that decision of the Commissioner of the Social Security Administration is reversed, with this matter being remanded for the immediate award of benefits. The Clerk of Court is directed to enter judgment in favor of Plaintiff and to close this case.

IT IS SO ORDERED.

Dated:    **November 3, 2022**              /s/ Erica P. Grosjean
                                           UNITED STATES MAGISTRATE JUDGE